Amanda Wilde
13025 Callcott Way
San Diego, CA 92130
843.830.0428

FILED

2024 FEB 12 PM 3: 11

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
SANTA ANA

BY DVE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

IFP Submitted.

| | |
|---|---|
| Amanda Wilde, | **FIRST COMPLAINT** |
| Plaintiff, | **FOR CIVIL RIGHTS VIOLATION** |
| | **[42 U.S.C § 1983]** |
| v. | <u>DEMAND FOR JURY TRIAL</u> |
| County of Orange, Orange County Social Services, | 8:24-cv-00298-WDK-(SP) |
| Child Protective Services, Child and Family Services, | |
| Children's Hospital of Orange County, Rady | |
| Children's Hospital of San Diego, Teri Small, Danise | |
| Johnson, Gai Sweeny, Melissa Adame, Meghan | |
| Mauer, Nadine Arasaghli, Clarita Granada, Jacqueline | |
| Jimenez, Martha Corona, Yannine Tajalle, Leticia | |
| Zavala, Dr. Anthony D. Liu, Dr. David C. Kim, Dr. | |
| Anita Rayma Shah, Dr. Nandini Arul, Dr. Christine | |
| Kurlawalla-Martinez, Dr. Shephen J. Hanten, NICU | |
| Charge Nurse Kate, Cynthia A. Brunozzi, Eva | |
| Esmaeili, Liz Drake, Monica Evans, Nicole R. Sager, | |
| Emily Eggert, Tina Nguyen, Dr. Tara Glenn, Christine | |
| Cate, Alicia Acosta | |
| Defendants, | |

## INTRODUCTION

1. I, Amanda Wilde, bring suit for violation of constitutional rights to familial association and privacy by the County of Orange, Children's Hospital of Orange County, Rady Children's Hospital of San Diego due to their constitutionally violative practices, carried out through individual employees of the County of Orange, Children's Hospital of Orange County, Rady Children's Hospital of San Diego as related to the removal of my daughter, minor H.W. from her mother.

2. February 13, 2022 H.W. was removed by judicial deception based on complete and total fraud, deliberately fabricated and perjured statements, as well as numerous omissions of material exculpatory information in an affidavit in support of custody warrant and emergency medical care.

## JURISDICTION

3. The Court has original jurisdiction over the claims alleged herein because they arise under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Pursuant to 28 U.S.C. section 1367(a), the Court also has supplemental jurisdiction over the state law claims herein, which are so related to the vindication of constitutional rights that they form the same case or controversy.

## VENUE

5. Venue is proper in this judicial district because all defendants are residents of California and the events or omissions giving rise to Plaintiff's claims occurred in the County of Orange, State of California.

## PARTIES

**Plaintiff**

6.  Plaintiff, AMANDA WILDE ("Amanda"), is a woman who at all times relevant resided in the County of Orange. Amanda is the biological mother of minor H.W.

**Defendants**

7.  Defendant, County of Orange ("COUNTY"), is a political subdivision of the State of California. Child Protective Services ("CPS") and Child and Family Services ("CFS"), are administrative subdivisions of the COUNTY. COUNTY employees individuals to carry out action on its behalf.

8.  Defendant, Children's Hospital of Orange County ("CHOC"), is a medical facility in Orange County. CHOC has in its employment various nurses, doctors, health practitioners, and social workers who act on its behalf.

9.  Defendant, Rady Children's Hospital of San Diego ("RADY"), is a medical facility in San Diego County. RADY has in its employment various nurses, doctors, health practitioners, and social workers who act on its behalf.

10. Defendant, Teri Small is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a senior social worker acting under color of state law at all times pertinent to the claims set forth herein.

11. Defendant, Danise Johnson is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a senior social worker acting under color of state law at all times pertinent to the claims set forth herein.

12. Defendant, Gai Sweeny is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a senior social worker acting under color of state law at all times pertinent to the claims set forth herein.

13. Defendant, Melissa Adame is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a senior social worker acting under color of state law at all times pertinent to the claims set forth herein.

14. Defendant, Meghan Mauer is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a social worker acting under color of state law at all times pertinent to the claims set forth herein.

15. Defendant, Nadine Arasaghli is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a senior social worker acting under color of state law at all times pertinent to the claims set forth herein.

16. Defendant, Clarita Granada is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a social worker acting under color of state law at all times pertinent to the claims set forth herein.

17. Defendant, Jacqueline Jimenez is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a senior social worker acting under color of state law at all times pertinent to the claims set forth herein.

18. Defendant, Martha Corona is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a senior social worker acting under color of state law at all times pertinent to the claims set forth herein.

19. Defendant, Yannine Tajalle is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a senior social worker acting under color of state law at all times pertinent to the claims set forth herein.

20. Defendant, Leticia Zavala is a woman who, at all times pertinent to the events described herein, was employed by the COUNTY as a social worker acting under color of state law at all times pertinent to the claims set forth herein.

21. Defendant, Dr. Anthony D. Liu is a man who at all times pertinent to the events described herein, was employed by CHOC.

22. Defendant, Dr. David C. Kim is a man who at all times pertinent to the events described herein, was employed by CHOC.

23. Defendant, Dr. Anita Rayma Shah is a woman who at all times pertinent to the events described herein, was employed by CHOC.

24. Defendant, Dr. Nandini Arul is a woman who at all times pertinent to the events described herein, was employed by CHOC.

25. Defendant, Dr. Christine Kurlawalla-Martinez is a woman who at all times pertinent to the events described herein, was employed by CHOC.

26. Defendant, Dr. Shephen J. Hanten is a man who at all times pertinent to the events described herein, was employed by CHOC.

27. Defendant, NICU Charge Nurse Kate is a woman who at all times pertinent to the events described herein, was employed by CHOC.

28. Defendant, Cynthia A. Brunozzi is a woman who at all times pertinent to the events described herein, was employed by CHOC.

29. Defendant, Eva Esmaeili is a woman who at all times pertinent to the events described herein, was employed by CHOC.

30. Defendant, Liz Drake is a woman who at all times pertinent to the events described herein, was employed by CHOC.

31. Defendant, Monica Evans is a woman who at all times pertinent to the events described herein, was employed by CHOC.

32. Defendant, Nicole R. Sager is a woman who at all times pertinent to the events described herein, was employed by CHOC.

33. Defendant, Emily Eggert is a woman who at all times pertinent to the events described herein, was employed by CHOC.

34. Defendant, Tina Nguyen is a woman who at all times pertinent to the events described herein, was employed by CHOC.

35. Defendant, Dr. Tara Glenn is a woman who at all times pertinent to the events described herein, was employed by RADY.

36. Defendant, Christine Cate is a woman who at all times pertinent to the events described herein, was employed by RADY.

37. Defendant, Alicia Acosta is a woman who at all times pertinent to the events described herein, was employed by RADY.

## DECLARATION OF FACTS

38. The aforementioned defendants were directly involved in the violation of Amanda's constitutional rights. Including, but not limited to, the actions of judicial deception, complete and

total fraud, deliberately fabricated and perjured statements, numerous omissions of material exculpatory information in an affidavit in support of custody warrant and emergency medical care.

39.   H.W. was not in need of emergency medical care. H.W. was not a medically fragile infant. Amanda made no actions that were neglectful or abusive towards H.W., medically or otherwise. All claims of such are erroneous lies.

The following are in order of their appearance in the Failure to Protect 300b warrant affidavit.

1. Fabrication of a mental health disorder, " bipolar" used to support claims of unfit, negligent, inadequate parenting and child care.

   Page 4, Paragraph 3, lines 1-4, 13, 14; Page 18, Paragraph 2, lines 4, 5; Page 27, Interview with Eva, lines 1, 2; Page 39, lines 1, 2; Page 40, Page 62, Paragraph 3, line 13, Paragraph 4, lines 1-4; Page 63, lines 2-7 (EXHIBIT A)

Amanda is not and has never been diagnosed with bipolar disorder.

2. Fabricated gestational dates of 28 weeks used to exaggerate prematurity.

   b-1, line 1 (EXHIBIT B)

   H.W. was 29 weeks 2 days gestation. Amanda's last menstrual cycle was May 18, 2021.

3. Totally and completely omitted prenatal care.

   b-1, line 2 (EXHIBIT C)

   Amanda had prenatal care, including bloodwork and ultrasounds, on the following dates: July 15, 2021; July 16, 2021; August 3, 2021; September 23, 2021; October 18, 2021; November 15, 2021

4. Fabricated opposition and decline of medical treatment. Completely omitted 259 instances of consent to medical care including, but not limited to: nursing care, medical and surgical consent, nicview monitor, thoracentesis, endotracheal intubation, surfactant therapy, blood products, blood transfusions, umbilical artery catheter, umbilical venous catheter, peripheral inserted central catheter, premature infant nutrition, human milk products, donor breast milk, iron supplementation, vitamin D supplementation, phototherapy, retinopathy screenings, traditional Chinese medicine, reiki, and acupuncture.

b-1, lines 4, 5 (EXHIBIT D)

5. Complete omission of life threatening illness associated with the recommended fortifier Similac which was under recall for the death of 2 and hospitalization of 4 infants after causing necrotising enterocolitis at the time of said recommendation. Complete omission of alternative fortifiers and supplements provided by the Plaintiff.

b-1, line 6 (EXHIBIT E, EXHIBIT F, EXHIBIT G)

6. Fabricated actions regarding H.W. oxygen intake.

b-1 lines 6, 7

7. Fabricated weight loss of H.W.

b-1 lines 9, 10 (EXHIBIT H)

H.W.'s weight never declined. Amanda asked for and recorded H.W.'s weight daily to remain aware of how well she was gaining. The nutritionist, Monica Evans, reported that H.W. weight goals were met or exceeded seven out of nine times. The two times she missed her weekly weight goal were explained by health events: thoracentesis and beginning PO feeding. She still gained weight.

8. Fraudulently used clinical finding of "Failure to Thrive" to support claims that H.W. was a medically fragile infant.

   b-1, line 10 (EXHIBIT I)

   Failure to Thrive is not a diagnosis, but a clinical finding. It is defined by CHOC, Johns' Hopkins, US National Library of Medicine, Nationwide Children's Organization, American Family Physicians, and NASPGHAN, as "slowed or halted physical growth with height and weight measurements falling below the 3rd or 5th percentile or a downward change across two major growth percentiles: 95, 90, 75, 50, 25, 10, 5." H.W.'s percentage at her true "dry" weight of 1100 grams on December 15, 2021, according to CHOC nutritionist Monica Evans, was at the 23rd percentile. Ms. Evans reported that Hollis' weight on February 9th, 2022, 2555 grams, was at the 20th percentile.

9. Omission of attempts to transfer H.W.'s care over concern of "Failure to Thrive" finding while in the care of CHOC and its employees.

   b-2, lines 1-4 (EXHIBT J)

   Dr. Kurlawalla reached out to Hoag Hospital on February 11, 2022 but H.W. was denied the transfer because she was "not sick enough."

10. Omissions of Plaintiff's concerns of inadequate medical care at CHOC.

    b-2, line 6 (EXHIBIT K)

    H.W. had a history of anemia at CHOC that was not being monitored. Plaintiff asked to discuss her labs on February 5th, CHOC physicians had not ordered CBC labs since January 10, 2022.

11. Fraudulently and erroneously claimed H.W. was at risk of intraventricular hemorrhage.

b-2, lines 6, 7 (EXHIBIT L)

H.W. had multiple brain scans at CHOC which confirmed that she was not at risk for intraventricular hemorrhage (IVH). Further, in the report to RADY from CHOC physician Dr. Liu stated that her head ultrasounds were normal. Verbal confirmation from Dr. Lui prior to leaving CHOC also verifies that H.W. was not at risk of IVH or any other immediate and emergent situation. RADY did not perform another head ultra sound and H.W. was discharged after 3 days of observation.

## DAMAGES

40. As a result of the conduct of Defendants, the Plaintiff has suffered severe emotional distress, anxiety, depression, Post Traumatic Stress and broad ranging damage to her psyche and mental health, to a level and degree such as she shall experience the same in the future. These damages inflicted by the Defendants have caused physical manifestations as well. Since the event Amanda has suffered sleep disturbance, diet disturbance, loss of enjoyment of life, and reputational harm.

41. Due to the stress and trauma of having her daughter removed from her arms she struggles with feelings of helplessness that she was unable to protect her daughter. Further, she now harbors a deep fear of law enforcement and authority figures. She suffers extreme hyper vigilance, has panic attacks when there is an unexpected knock at the door, high levels of stress when she receives a telephone call from a blocked number or an unknown 949 area code and she does not answer them.

42. Plaintiff claims loss of wages past and future. She has not been able to work out of the fear of contact with malicious child care providers that stems from this experience and overwhelming, debilitating fear that H.W. will be wrongfully, traumatically removed from her.

43. She claims special damages in form of the retention of legal counsel to assist her in the juvenile dependency proceedings.

44. Plaintiff seeks recovery of exemplary (punitive) damages due to the wrongful actions of Defendants, conducted maliciously and/or with reckless disregard as herein alleged in the hope to deter them and others similarly situated from such conduct in the future.

45. Defendants committed these unconstitutional acts without proper justification or authority, without probable cause, and without any specific evidence to suggest that H.W. was in imminent danger, in need of emergency medical care, or at risk of serious bodily injury or death at the hands of her mother, Amanda.

46. At the time of the removal, Defendants possessed no information or evidence that H.W. was in danger of suffering severe bodily injury or other serious harm. The removal of H.W. from Amanda was deliberate and undertaken with a reckless indifference to Amanda's parental rights over her child, H.W., and of H.W.'s right to be with and enjoy the companionship and care of her mother.

### First CLAIM FOR RELIEF

### FALSE IMPRISONMENT – Seizure with a Fraudulent Warrant

47. Defendants seized and/or intentionally caused the seizure of H.W. from the care, custody, and control of her mother. Defendants procured a protective custody warrant authorizing the seizure of minor H.W. from the care and custody her mother Amanda through the use of perjured

statements, deception, deliberate fabrication, and fraudulent omissions of material fact, described hereinabove.

48. Defendants deliberately fabricated allegations against Plaintiff, and that as a result of these allegations without evidence in an application for protective custody warrant being used against her Plaintiffs suffered forced separation from her daughter and continued deprivation of her right to family association under the Fourteenth Amendment to the United States Constitution. At the time each misrepresentation was made Defendants knew the statements were not true or acted in reckless disregard by including representations for which they had no knowledge were true or false or were a misrepresentation of facts. At the time of each concealment of material fact, said Defendants knew that they were not telling the complete truth with the object of misleading the Superior Court of California to issue a warrant. At the time of omission Defendants were in possession of information that would wholly or significantly refuted the allegations contained in the affidavit.

49. As a result of Defendants fraudulent and perjured statements, Plaintiff was separated from her daughter by the actions of COUNTY and CHOC and their actors and further kept from her daughter by the actions of COUNTY and RADY and their actors. Defendants, and each of them, did not have judicial authorization to seize and detain H.W.

## Second CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. Amanda did not consent to the seizure, transportation, and detention, and the conditions were the direct result of the fraud contained in the affidavit. Further, the seizure of H.W. was not supported by exigent circumstances. The forced separation and seizure was based on a custody

warrant procured through use of fabricated evidence, perjured statements and omissions that would have wholly and completely refuted the allegations.

51. In doing so each defendant intentionally caused or acted with reckless disregard of the possibility of severe emotional distress to the Plaintiff. As a direct result of the Defendants' misconduct Amanda has suffered and will continue to suffer, general and special damages according to proof at trial.

52. COUNTY, CHOC, and RADY have created and allowed to flourish a custom, policy, and practice of false allegations, false statements, misrepresentations of evidence, and omitting exculpatory information that may be clarifying or mitigating to one or more allegations or statements of fact for purposes of securing removal, extending juvenile court proceedings, and resulted in the initial, unlawful detention of and continued detention of H.W. from her mother during the pendency of such proceedings and is used repeatedly in warrant applications, detention reports, disposition reports, jurisdiction reports, and all manner of written filings made with the juvenile dependency court.

53. These policies, practices, and customs were the moving force behind the submission of a fraudulent application for a protective custody warrant and removal of H.W. It is well-established that the forced separation of mother and child is a traumatic event to both mother and child. It is a dishonor and violation that is demonstrated to have detrimental, life long effects on the physiology, psychology, and emotional health of mother and child.

54. Further this conduct directly contradicts long-established law which results in violations to rights guaranteed to parents and children and is the antithesis of the aims of the U.S. and California Constitutions, which is to preserve personal rights of speech, privacy, and association – among other rights. This is what happened in this case based on the foregoing allegations

regarding the lies, misrepresentations, and omissions of material and exculpatory facts that were replete in the application for the protective custody warrant.

## JURY TRIAL DEMAND

55. Plaintiff respectfully demands this matter be tried to a jury.

## PRAYER FOR RELIEF

56. Wherefore, plaintiff prays for judgement against Defendants as follows

- General Damages and special damages according to proof

- Punitive damages as allowed by law

- Attorneys fees and costs pursuant to 42 U.S.C. § 1988, and any other appropriate statutes or decisional law allowing for the recovery of attorney fees and costs against Defendants.

- Such further relief as the court deems just and proper

Amanda Wilde

2/11/2024